# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

THOMAS W., JR.,                  )
                                 )
    Plaintiff,      )
                                 )
  v.                          )   1:24CV980
                                 )
FRANK J. BISIGNANO,              )
Commissioner of Social           )
Security,                        )
                                 )
    Defendant.[1]      )

## MEMORANDUM OPINION AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Thomas W., Jr., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of the final decision of Defendant, the Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) The Commissioner has filed the certified administrative record (Docket Entry 5 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 8 (Plaintiff's Memorandum); Docket Entry 10 (Commissioner's

---

[1] The United States Senate confirmed Frank J. Bisignano as the Commissioner of the Social Security Administration on May 6, 2025, and he took the oath of office on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank J. Bisignano should substitute for Leland C. Dudek as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Brief); Docket Entry 11 (Plaintiff's Reply)).  For the reasons that follow, the Court will enter judgment for the Commissioner.[2]

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB (Tr. 218-24), alleging a disability onset date of February 15, 2021 (see Tr. 223).[3]  Upon denial of that application initially (Tr. 62-74, 91-95) and on reconsideration (Tr. 75-85, 98-101), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 102-03).  Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing.  (Tr. 38-60.)  The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act.  (Tr. 14-37.)  The Appeals Council denied Plaintiff's request for review (Tr. 1-6, 180-83), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

1.    [Plaintiff] meets the insured status requirements of the . . . Act through June 30, 2027.

---

[2] On consent of the parties, this "case [wa]s referred to [the undersigned] United States Magistrate Judge [] to conduct all proceedings . . ., to order the entry of judgment, and to conduct all post-judgment proceedings []herein." (Docket Entry 9 at 1.)

[3] At the hearing, Plaintiff requested to amend his onset date from February 15, 2021, to January 1, 2022.  (See Tr. 42.)  Although the ALJ appeared to grant that request (see id.), the ALJ adjudicated the period from Plaintiff's original alleged onset date of February 15, 2021, to December 15, 2023, the date of the ALJ's decision (see Tr. 19, 32).  Accordingly, in ruling on this matter, the Court will similarly address the period from February 15, 2021, to December 15, 2023.

2

2.    [Plaintiff] has not engaged in substantial gainful activity since February 15, 2021, the alleged onset date.

. . .

3.    [Plaintiff] has the following severe impairments: arthritis, degenerative joint disease of the right shoulder with tendinosis and probable adhesive capsulitis, hypertension, depression, anxiety, and posttraumatic stress disorder (PTSD).

. . .

4.    [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5.    [Plaintiff] had the residual functional capacity to perform light work . . . except [he] can occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds; he can stand and/or walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday; [he] can push and pull as much as he can lift and/or carry; he can engage in no overhead reaching; [he] can occasionally climb ladders, ropes, or scaffolds; he can have no more than occasional exposure to heights, hazards, or moving machinery; [he] retains the capacity to concentrate, persist, and maintain pace for one-to-three step instructions in two-hour increments over the course of an eight-hour workday and a 40 hour workweek; he has the ability to sustain routine social interactions with coworkers and supervisors, but no interaction with the general public; and [he] has the ability to deal with routine changes and safety issues.

. . .

6.    [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there are

3

jobs that exist in significant numbers in the national economy that [Plaintiff] can perform.

. . .

11. [Plaintiff] has not been under a disability, as defined in the . . . Act, from February 15, 2021, through the date of th[e ALJ's] decision.

(Tr. 19-32 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

4

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[4] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a

---

[4] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[5] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[6] Step four

---

[5] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[6] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an

7

then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant  work"; if so, the claimant does not qualify as disabled.  <u>Id.</u> at 179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." <u>Hall</u>, 658 F.2d at 264-65.  If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled.  <u>Hines</u>, 453 F.3d at 567.[7]

---

equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)."  <u>Hall</u>, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (<i>e.g.</i>, pain)."  <u>Hines</u>, 453 F.3d at 562-63.

[7] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

## B.  Assignments of Error

Plaintiff asserts that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "the ALJ fail[ed] to observe the guidance in S[ocial] S[ecurity] R[uling] 00-4p[, <u>Policy Interpretation Ruling: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions</u>], 2000 WL 1898704 (Dec. 4, 2000) ('SSR 00-4p')[,] which directs the ALJ to inquire about conflicts between the [VE]'s [] testimony and the [<u>Dictionary of Occupational Titles</u>] ('[<u>DOT</u>]'); to identify apparent conflicts; and to resolve any apparent conflicts before relying on VE testimony" (Docket Entry 8 at 11 (italics and block formatting omitted) (citing <u>Pearson v. Colvin</u>, 810 F.3d 204, 210-11 (4th Cir. 2015)); <u>see also</u> Docket Entry 11 at 1-5); and

2) "the ALJ fail[ed] to incorporate non-exertional limitations on the ability to stay on task where the ALJ first f[ound] that [P]laintiff was moderately impaired in the maintenance of [concentration, persistence, or pace ('CPP')]" (Docket Entry 8 at 16 (block formatting omitted) (citing <u>Mascio v. Colvin</u>, 780 F.3d 632, 638 (4th Cir. 2015)); <u>see also</u> Docket Entry 11 at 5-7).

The Commissioner contends otherwise and seeks affirmance of the ALJ's decision.  (Docket Entry 10 at 4-15.)

9

### 1. Conflict Between VE's Testimony and the <u>DOT</u>

Plaintiff's first assignment of error maintains that "the ALJ fail[ed] to observe the guidance in SSR 00-4p[,] . . . which directs the ALJ to inquire about conflicts between the [VE]'s [] testimony and the . . . [<u>DOT</u>]; to identify apparent conflicts; and to resolve any apparent conflicts before relying on VE testimony." (Docket Entry 8 at 11 (italics and block formatting omitted) (citing <u>Pearson</u>, 810 F.3d at 210-11); <u>see also</u> Docket Entry 11 at 1-5).)  In particular, Plaintiff notes that "the ALJ ask[ed] the VE to consider an individual with [an] RFC . . . including a limitation to no overhead reaching, and the VE respond[ed] with three jobs . . . [-] price marker ([<u>DOT</u> No.] 209.587-034)[,] mail sorter ([<u>DOT</u> No.] 222.687-022)[,] and router ([<u>DOT</u> No.] 222.587-038)[ - a]ll three of [which] require frequent reaching." (Docket Entry 8 at 12 (internal citation omitted) (citing Tr. 57).) Plaintiff acknowledges that the ALJ asked the VE "'the basis of [her] testimony'" for matters in "'each of the hypotheticals . . . not directly addressed by the [<u>DOT</u>] such as overhead reaching or absenteeism or off task behavior,'" as well as that the VE responded "that[,] for those issues 'that are not covered or not delineated specifically in the [<u>DOT</u>] and [<u>Selected Characteristics of Occupations in the Revised Dictionary of Occupational Titles</u> ('<u>SCO</u>')], [she ] use[d] her education and training, [her] job placement experience, and [her] knowledge of

10

the jobs to address those issues, all that wasn't consistent.'" (Id. at 12-13 (quoting Tr. 58).) In Plaintiff's view, the ALJ's adoption of that testimony at step five of the SEP did not comply with the requirements of SSR 00-4p and Pearson, because "[t]he ALJ d[id] not state whether he accept[ed] the VE's statements, [] if the VE's statements address[ed] any conflict between the frequent reaching required in the [DOT] and the limitation to no overhead reaching[,] . . . [or] whether the VE's explanation [wa]s reasonable." (Id. at 13 (citing Tr. 58, and Pearson, 810 F.3d at 208).) According to Plaintiff, "[w]here statements regarding possible conflicts are 'too vague and ambiguous to fairly constitute an identification of the specific apparent conflict . . . the Court cannot determine if the ALJ's step five findings is supported by substantial evidence.'" (Id. at 14-15 (quoting Crouse v. Saul, No. 1:18CV269, 2019 WL 4015553, at *5 (M.D.N.C. Aug. 26, 2019) (unpublished) (Peake, M.J.), recommendation adopted, 2019 WL 5783532 (M.D.N.C. Sept. 16, 2019) (unpublished) (Osteen, J.)).) Plaintiff's contentions miss the mark.

SSR 00-4p places an affirmative duty on an ALJ to elicit an explanation from the VE as to any "apparent unresolved conflict" between the VE's testimony and the DOT:

> Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the [DOT]. When there is an apparent

> unresolved conflict between VE . . . evidence and the [DOT], the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled.  At the hearings level, as part of the [ALJ's] duty to fully develop the record, the [ALJ] will inquire, on the record, as to whether or not there is such consistency.

SSR 00-4p, 2000 WL 1898704, at *2 (emphasis added).  Moreover, "an ALJ has not fulfilled his affirmative duty merely because the [VE] responds 'yes' when asked if her testimony is consistent with the [DOT]," Pearson, 810 F.3d at 208 (internal quotation marks omitted); thus, "[t]he ALJ independently must identify . . . where the [VE's] testimony seems to, but does not necessarily, conflict with the [DOT]," id. at 209 (emphasis added); see also id. (rejecting the Commissioner's argument that an "apparent" conflict meant only an "obvious" one).[8]

In Pearson, "[t]he ALJ found [the claimant's] non-dominant arm could only occasionally reach upward," but for all three jobs cited

---

[8] On December 6, 2024, the SSA issued Social Security Ruling 24-3p, Titles II and XVI: Use of Occupational Information and Vocational Specialist and Vocational Expert Evidence in Disability Determinations and Decisions, 2024 WL 5256890 (Jan. 6, 2025) ("SSR 24-3p"), which "rescinds and replaces SSR 00-4p," id. at *1.  Applicable to decisions on or after January 6, 2025, see id. at *2 & n.1, SSR 24-3p "will no longer require [ALJs] to identify and resolve conflicts between occupational information provided by . . . VEs and information in the [DOT,] id. at *2.  In rescinding SSR 00-4p, the SSA noted that its "adjudicative experience since [it] issued SSR 00-04p has shown that requiring [ ALJs] . . . and VEs to identify and explain conflicts with the [DOT] is time consuming," and that, "[a]t the hearing level, the requirements of SSR 00-4p have led to unnecessary remands to resolve apparent conflicts that were not identified at the hearing when the VE testified, and the requirements of SSR 00-4p might discourage . . . VEs from using occupational data in sources other than the [DOT]."  Id. at *2.  As the ALJ in this case issued his decision on December 15, 2023 (see Tr. 32), prior to the effective date of SSR 24-3p, the Court will apply SSR 00-4p to analyze Plaintiff's first assignment of error.

12

by the VE, "the [DOT] list[ed] *frequent* reaching as a requirement." Pearson, 810 F.3d at 210 (emphasis in original). The Pearson court further noted that "[t]he [DOT] defines reaching as '[e]xtending hand(s) and arm(s) in any direction.'" Id. (quoting SCO, App'x C ("Physical Demands"), § 8 (U.S. Dep't of Labor 1993).) The court then observed: "Although the [DOT] does not expressly state that the occupations identified by the [VE] require frequent bilateral overhead reaching, the [DOT's] broad definition of 'reaching' means that they certainly *may* require such reaching." Id. at 211 (emphasis in original). The court found the ALJ had failed to identify or resolve that apparent conflict and remanded the case. Id. at 211-12.

In this case, the ALJ queried the VE whether any light-exertion jobs existed for an individual with Plaintiff's age, education, and work history, and who, as relevant here, could not "perform overhead reaching." (Tr. 56.) In response, the VE opined that such an individual could perform the jobs of price marker, mail sorter, and router, and provided the corresponding DOT codes for the three jobs, as well as their incidence in the national economy. (See Tr. 57.) The ALJ thereafter noted that "each of the hypotheticals address[ed] issues not directly addressed by the [DOT] such as overhead reaching or absenteeism or off task behavior," and asked the VE "the basis of [her] testimony on those kinds of issues." (Tr. 58 (emphasis added).) The VE responded

13

that, "[f]or those types of things . . . that are not covered or not delineated specifically in the [DOT] and [SCO], I do use my education and training, my job placement experience, and my knowledge of the jobs to address those issues, all that wasn't consistent." (Id.)  On cross-examination, Plaintiff's counsel did not question the VE about any apparent conflict between the dispositive hypothetical question's preclusion of overhead reaching (see Tr. 56) and the DOT's description of the three jobs the VE cited as requiring frequent reaching, see DOT, No. 209.587-034 ("Marker"), 1991 WL 671802 (G.P.O. 4th ed. rev. 1991); DOT, No. 222.687-022 ("Routing Clerk"), 1991 WL 672133;[9] DOT, No. 222.587-038 ("Router"), 1991 WL 672123.  (See Tr. 58-59.)

The ALJ subsequently adopted the VE's testimony to find, at step five of the SEP, that "[Plaintiff wa]s capable of making a successful adjustment to other work that exist[ed] in significant numbers in the national economy" (Tr. 32).  More specifically, the ALJ explained as follows:

> To determine the extent to which [the RFC's non-exertional limitations] erode the unskilled light occupational base, the [ALJ] asked the [VE] whether jobs exist in the national economy for an individual with [Plaintiff's] age, education, work experience, and [RFC]. The [VE] testified that given all of these factors the

---

[9] The DOT identifies as "Routing Clerk," DOT, No. 222.687-022 ("Routing Clerk"), 1991 WL 672133, the occupation to which the VE referred as "mail sorter" (Tr. 57).

14

individual would be able to perform the requirements of representative occupations such as:

1. Price marker, which the [DOT] defines at 209.587-034 as light and unskilled with a[ Specific Vocational Preparation ('SVP')] of two, of which there exist 137,000 jobs in the national economy.

2. Mail sorter, which the [DOT] defines at 222.687-022 as light and unskilled with an SVP of two, of which there exist 118,000 jobs in the national economy.

3. Router, which the [DOT] defines at 222.587-038 as light and unskilled with an SVP of two, of which there exist 25,000 jobs in the national economy.

The [VE]'s testimony was not inconsistent with the [DOT]; however, the testimony did address issues not covered by the [DOT]. For this testimony, she utilized her education, training, and experience to form her opinions.

(Tr. 31-32 (emphasis added).) For the reasons that follow, the ALJ's adoption of the VE's testimony at step five of the SEP complied with SSR 00-4p and Pearson.

The ALJ here expressly acknowledged the apparent conflict at issue by stating that "each of the hypotheticals address[ed] issues not directly addressed by the [DOT] such as overhead reaching" and by asking the VE "the basis of [her] testimony on those kinds of issues." (Tr. 58 (emphasis added).) The VE's response that, "[f]or those types of things . . . that are not covered or not delineated specifically in the [DOT] and [SCO], I do use my education and training, my job placement experience, and my knowledge of the jobs to address those issues, all that wasn't

15

consistent" (<u>id.</u> (emphasis added)), provided a reasonable explanation to resolve that apparent conflict, <u>see</u> <u>Corder v. Colvin</u>, No. 1:14CV768, 2015 WL 4508418, at *4-5 (M.D.N.C. July 24, 2015) (unpublished) (Peake, M.J.) ("[A VE]'s knowledge provides the main, if not the only, reliable source of information regarding certain job aspects . . . which are not covered by the [<u>DOT</u>]. Accordingly, '[c]ourts have held that <u>professional experience or knowledge is a reasonable explanation</u>' where, as here, the [<u>DOT</u>] is silent as to a hypothetical work restriction. Moreover, '[n]othing in SSR 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct[.]'" (emphasis added) (internal citations omitted) (quoting <u>Pierpaoli v. Astrue</u>, No. 4:10CV2401, 2012 WL 265023, at *4 n.6 (D.S.C. Jan. 30, 2012) (unpublished), and <u>Martin v. Commissioner of Soc. Sec.</u>, 170 F. App'x 369, 374 (6th Cir. 2006)), <u>recommendation adopted</u>, 2015 WL 5254305 (M.D.N.C. Sept. 9, 2015) (unpublished) (Schroeder, J.), particularly where, as here, Plaintiff has not challenged the VE's qualifications as an expert (<u>see</u> Tr. 53), <u>see</u> <u>Pierpaoli</u>, 2012 WL 265023, at *4 ("The ALJ asked the VE if her testimony was consistent with the [<u>DOT</u>] and the VE said it was consistent, but acknowledged that the [<u>DOT</u>] does not provide for a sit/stand option. The VE then testified that [the p]laintiff would be able to perform the [] jobs [at issue] with a sit/stand option based on her professional observance. [The

16

p]laintiff argues that the ALJ should have inquired as to how [the VE] obtained her professional knowledge, but fails to cite any case law or regulation requiring an ALJ to ask a VE for more information about professional experience after the claimant's attorney has expressed that he has no objections to the VE's qualifications." (internal citations and quotation marks omitted)).  In turn, the ALJ's statements in his decision that "[t]he [VE]'s testimony was not inconsistent with the [DOT]; however, the testimony did address issues not covered by the [DOT, and f]or th[at] testimony, she utilized her education, training, and experience to form her opinions" (Tr. 32) fulfilled the ALJ's obligation to "explain in the . . . decision how he . . . resolved the conflict," SSR 00-4p, 2000 WL 1898704. at *4.  Pearson and SSR 00-4p require nothing more of the ALJ.

A neighboring federal district court recently and persuasively found, under similar circumstances, that the ALJ's express acknowledgement during the hearing that the DOT did not address the direction of reaching, coupled with the VE's response that he relied upon his training, education, and work experience in testifying that the jobs at issue could accommodate the overhead reaching restriction, sufficed under Pearson and SSR 00-4p.  See Petrone-Knechtel v. Dudek, No. 4:24CV4183, 2025 WL 1757902, at *6-7

17

(D.S.C. Mar. 31, 2025) (unpublished).  That court reasoned as follows:

> [T]he ALJ noted multiple issues that are not addressed in the [DOT], like . . . "<u>overhead directional reaching</u>," [and] then the ALJ asked the VE "your testimony with regard to those facts and any other variant is based on your training, your education, and your work experience, but the balance of your testimony has been consistent with the [DOT] and its companion publications, correct?" The VE answered "correct."  <u>Both the ALJ and the VE twice outright acknowledged . . . overhead reaching [is] not addressed in the</u> [DOT]; <u>the</u> [DOT] <u>only addresses reaching generally</u>. . . .
>
> [The p]laintiff appears to argue the reaching discussion was not taken far enough[,] . . . and the VE should have explained how, based on each job, [] the jobs of addressing clerk, order clerk, and products inspector would not require more than occasional overhead reaching with the left upper extremity . . . .  The [DOT] does not state that overhead reaching is frequently required for the jobs found by the ALJ.  The VE before the current ALJ testified . . . that the jobs fit within the hypothetical as to left occasional overhead reaching because the [DOT] does not separate all reaching from overhead reaching and the VE's testimony about these jobs' availability is from his <u>training, education, and work experience</u> . . . .
>
> <u>Many of the cases involving *Pearson* and SSR 00-4p are cases where the ALJ never identified the apparent conflict in reaching; this is not the case here</u>.  While an ALJ, not the VE, has an affirmative duty to recognize an apparent conflict between the [DOT] and VE, an ALJ is entitled to rely on the VE's testimony when eliciting information about the apparent conflict; an ALJ is not an expert on all available jobs and hypothetical . . . limitation[s'] application[] to jobs, hence the presence of a [VE] at [the] hearing[ ]. . . .
>
> The [c]ourt finds the on-record discussion between the ALJ and VE regarding reaching provides the explanation

        required by SSR 00-4p and its progeny and provides
        substantial evidence for the ALJ's decision . . . .

Id. at *6-7 (emphasis added) (internal parenthetical citations and footnote omitted); see also Lessie B. v. Dudek, No. 1:23CV1020, 2025 WL 777195, at *4-5 (M.D.N.C. Mar. 11, 2025) (unpublished) (Peake, M.J.) (rejecting the plaintiff's "conten[tion] that the ALJ 'blindly relied' on the [VE]'s testimony," where ALJ noted "overhead reaching [wa]s not covered by the [DOT]," asked VE how he "determine[d] that the individual could perform [the jobs in question,]" and VE responded that he "based that on [his] education, training[,] and experience in job placement and job . . . analysis," and further holding that "neither SSR 00-4p nor the relevant case law require[s] the minute scrutiny and elaborate explanations [the p]laintiff suggests" (emphasis added)); Allen v. Berryhill, No. 1:17CV277, 2018 WL 2025666, at *6 (M.D.N.C. May 1, 2018) (unpublished) ("[T]he VE's testimony reflects that he expressly acknowledged that the DOT . . . [did not] specifically address[] the direction of reaching involved and, thus, relied on his own professional experience to opine that an individual who could not reach overhead with the left, non-dominant arm could still perform all three of the jobs in question. Under such circumstances, the ALJ complied with SSR 00-4p and Pearson by eliciting a reasonable explanation from the VE for the apparent

19

conflict in question."), <u>recommendation adopted</u>, slip op. (M.D.N.C. (May 23, 2018) (Biggs, J.).

Moreover, the cases upon which Plaintiff relies do not aid his cause. Plaintiff first cites <u>Ashley A.F. v. O'Malley</u>, No. 1:22CV983, 2024 WL 345733, at *6 (M.D.N.C. Jan. 30, 2024) (unpublished), for the proposition that a generalized statement that[,] 'to the extent that the VE's testimony was inconsistent with or not addressed in the <u>DOT</u>, the ALJ relied on the VE's education and work experience,' did not suffice to identify or resolve conflicts." (Docket Entry 8 at 13 (quoting <u>Ashley A.F.</u>, 2024 WL 345733, at *6).) However, in that case, the VE remarked "that her testimony remained 'consistent with the <u>DOT</u>' and did not identify <u>any</u> areas of her testimony that conflicted with the <u>DOT</u> or that the <u>DOT</u> did not address." <u>Ashley A.F.</u>, 2024 WL 345733, at *6 (brackets and internal parenthetical citation omitted). Thus, the record did not provide <u>any</u> basis for finding that the ALJ had even identified (let alone resolved) the <u>specific</u> apparent conflict at issue. <u>See</u> <u>id.</u> Plaintiff's citation to <u>Fogelman v. Saul</u>, No. 1:19CV78, 2020 WL 1929072, at *10 (M.D.N.C. Apr. 21, 2020) (unpublished), "remanding where 'the VE never specifically acknowledged the apparent conflict between the [<u>DOT</u>]'s descriptions for th[e] jobs [at issue] as involving <u>frequent</u> or <u>constant</u> reaching . . . and the hypothetical's restriction to <u>occasional</u> overhead reaching, stating only, generically, that 'any factor

20

which is simply not addressed by the [DOT] are [sic] based on [her] training and experience'" (Docket Entry 8 at 16 (quoting Fogelman, 2020 WL 1929072, at *10) (emphasis added to match original))), thus fails to support Plaintiff's instant quest for remand for the same reason as Ashley A.F.[10]

Next, Plaintiff relies on Crouse to argue that, "[w]here statements regarding possible conflicts are 'too vague and ambiguous to fairly constitute an identification of the specific apparent conflict . . . the Court cannot determine if the ALJ's step five findings is supported by substantial evidence.'" (Docket Entry 8 at 14-15 (quoting Crouse, 2019 WL 4015553, at *5) (emphasis added to match original).) However, unlike in this case where the ALJ specifically raised "overhead reaching" as an "issue[] not

---

[10] In Plaintiff's Reply, he further relies on Stowe v. Saul, No. 1:18CV121, 2019 WL 4026266, at *4 (M.D.N.C. Aug. 26, 2019) (unpublished) (Peake, M.J.), recommendation adopted, slip op. (M.D.N.C. Sept. 11, 2019) (Biggs, J.), and Mason v. Saul, No. 1:19CV474, 2020 WL 5259967, at *5 n.5 (M.D.N.C. Sept. 3, 2020) (unpublished) (Peake, M.J.), recommendation adopted, slip op. (M.D.N.C. Sept. 28, 2020) (Osteen, J.). (See Docket Entry 11 at 4.) That reliance misses the mark. In Stowe, "[t]he ALJ asked the [VE] generally whether her testimony was consistent with the [DOT] and its companion publications, but [the Commissioner] concede[d] that the ALJ never questioned the [VE] . . . for [an] explanation regarding the apparent conflict between [the RFC's limitation to] occasional overhead reaching and the [DOT's description of constant and frequent] reaching required to perform the jobs [at issue]." Stowe, 2019 WL 4016166, at *4. In Mason, the VE "never mention[ed] the impact of [the p]laintiff's . . . need for limited exposure to pulmonary irritants . . . on her ability to perform [the job] of industrial cleaner," which the DOT "described . . . as involving dust removal and the use of cleaning chemicals and incinerators," and "identified the impact of breaks, being off task, and absenteeism as the only relevant areas not covered by the [DOT], and for which he based his testimony on his education and training instead." Mason, 2020 WL 5259967, at *5 n.5 (internal quotation marks omitted). Thus, like in Ashley A.F. and Fogelman, Stowe and Mason also involve circumstances where neither the ALJ nor the VE addressed the specific apparent conflict at issue, thus distinguishing those cases from the instant case.

21

directly addressed by the [DOT]" (Tr. 58 (emphasis added), the VE in Crouse failed to mention overhead reaching as an area not addressed by the DOT, discussing instead "the breakdown of reaching right versus left." Crouse, 2019 WL 4015553, at *4 (emphasis added). Beyond the omission of overhead reaching, see id. at *5 ("[T]he Court notes that the VE did not identify the specific conflict in question."), the Court found "far from clear" the VE's "state[ment] that her testimony was 'somewhat outside the [DOT] and the companion publications just with the differentiating with the sit and stand as well as the breakdown of reaching right versus left,'" id. (emphasis added), and held that the VE's "explanation must [] be stated clearly enough to be susceptible to judicial review" id. The instant case involves neither the omission of a discussion regarding overhead reaching nor ambiguity in the VE's testimony.

In light of the foregoing analysis, Plaintiff's first assignment of error fails as a matter of law.[11]

---

[11] In Plaintiff's Reply, he argues, for the first time, that an apparent, unresolved conflict existed between the VE's testimony that an individual limited to one-to-three step instructions could perform the three jobs in question and the DOT's categorization of those jobs at Reasoning Development Level ("RDL") 2. (See Docket Entry 11 at 8-9 (citing Dellinger v. Berryhill, No. 3:17CV676, 2019 WL 1325929, at *3 (W.D.N.C. Mar. 25, 2019) (unpublished).) The Court will not consider this argument, as "[a] party waives an argument by failing to present it in its opening brief." Grayson O Co. v. Agadir Int'l LLC, 856 F.3d 307, 316 (4th Cir. 2017). "Because [Plaintiff] failed to develop such argument in [his] initial memorandum (see Docket Entry [8] at 1-[28]), [he] waived it[.]" J.H. v. Harford Mut. Ins., Grp., Inc., No. 1:21CV856, 2023 WL 4082281, at *2 n.6 (M.D.N.C. June 20, 2023) (unpublished), aff'd, No. 23-1733, 2025 WL 2269776 (4th Cir. Aug. 8, 2025) (unpublished).

22

## 2. CPP

In Plaintiff's second and final issue on review, he asserts that "the ALJ fail[ed] to incorporate non-exertional limitations on the ability to stay on task where the ALJ first f[ound] that [P]laintiff was moderately impaired in the maintenance of CPP." (Docket Entry 8 at 16 (block formatting omitted) (citing Mascio, 780 F.3d at 638); see also Docket Entry 11 at 5-7.) Plaintiff notes that, "[i]n *Mascio*, the Fourth Circuit held that an ALJ does not account for a claimant's moderate limitations in CPP by restricting the RFC or the hypothetical question to the [VE] to simple, routine tasks or unskilled work[,]" because "'the ability to perform simple tasks differs from the ability to stay on task[, and o]nly the latter limitation would account for a claimant's limitation in [CPP].'" (Docket Entry 8 at 16-17 (quoting Mascio, 780 F.3d at 638).) According to Plaintiff, the RFC's "limitation to work 'in two-hour increments over the course of an eight-hour workday and a 40 hour workweek' is the definition of a standard, unlimited work day, and thus does not account for any mental limitations at all." (Id. at 17 (quoting Tr. 22) (citing Program Operations Manual System ("POMS") § DI 25020.010.B.2.a (providing that "any job" requires "[t]he ability to maintain concentration and attention for extended periods (i.e., the approximately 2-hour segments between arrival and first break, lunch, second break, and

23

departure)")); see also id. at 17-18 (citing Tucker v. Saul, No. 1:18CV481, 2019 WL 3581795, at *5-6 (M.D.N.C. Aug. 6, 2019) (unpublished) (holding that "RFC's reference to concentrating on task for two hours at a time before changing tasks or being redirected . . . did not provide any limitation to account for [the p]laintiff's moderate deficit in CPP, but instead just left in place the standard work schedule" (emphasis in original) (internal quotation marks omitted)), recommendation adopted, 2019 WL 5783544 (M.D.N.C. Aug. 26, 2019) (unpublished) (Biggs, J.), Social Security Ruling 96-9p, Titles II and XVI: Determining Capability to Do Other Work – Implications of a Residual Functional Capacity for Less than a Full Range of Sedentary Work, 1996 WL 374185, at *6 (July 2, 1996) ("SSR 96-9p") (stating that "an 8-hour workday" includes "a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals"), and Capps v. Berryhill, No. 17CV2438, 2018 WL 4616018, at *5 (D. Md. Sept. 26, 2018) (unpublished) ("When a durational limitation is included [in the RFC], such limitations must consider that the normal 8-hour workday already includes breaks approximately every two [] hours and provide further explanation as to how that restriction adequately accounts for a moderate limitation in the ability to stay on task or else it does not meet the *Mascio* requirements." (internal quotation marks omitted))).)

24

Plaintiff additionally faults the ALJ for 1) relying on Plaintiff's ability to engage in daily activities that "may be done at [P]laintiff's own pace" and did not demonstrate an ability to stay on task in a work setting (id. at 20 (citing Tr. 20-21, 23)), 2) "list[ing] mental status exam findings" without "connect[ing them] to the ability to stay on task" or "explaining why th[ey] would mean no further limitations, such as a limitation to simple, routine, repetitive tasks[,] would be required" (id. at 21), and 3) failing to "include[] further limitations in social functioning" in the RFC to account for Plaintiff's "moderate limitations in interacting with others" (id. at 23). Those assertions entitle Plaintiff to no relief.

The Fourth Circuit has indeed held that "the ability to perform simple tasks differs from the ability to stay on task," and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]," Mascio, 780 F.3d at 638. However, as the Fourth Circuit later affirmed, Mascio held "that an ALJ cannot summarily 'account for a claimant's limitations in [CPP] by restricting the hypothetical question to simple, routine tasks or unskilled work,' . . . [b]ut did not impose a categorical rule that requires an ALJ to always include moderate limitations in [CPP] as a specific limitation in the RFC." Shinaberry v. Saul, 952 F.3d

25

113, 121 (4th Cir. 2020) (emphasis added).  As a neighboring district court has explained:

> <u>Mascio</u> does not broadly dictate that a claimant's moderate impairment in [CPP] <u>always</u> translates into a limitation in the RFC.  Rather, <u>Mascio</u> underscores the ALJ's duty to adequately review the evidence and explain the decision . . . .  An ALJ may account for a claimant's limitation with [CPP] by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

<u>Jones v. Colvin</u>, No. 7:14CV273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015) (magistrate judge's recommendation adopted by district judge) (unpublished) (emphasis added).  Here, the ALJ's decision provides a sufficient explanation as to why the RFC's finding that Plaintiff could "maintain [CPP] for one-to-three step instructions in two-hour increments over the course of an eight-hour workday and a 40 hour workweek" (Tr. 22) adequately accounted for Plaintiff's moderate deficit in CPP.

Plaintiff first contends that the RFC's "limitation to work 'in two-hour increments over the course of an eight-hour workday and a 40 hour workweek' is the definition of a standard, unlimited work day, and thus does not account for any mental limitations at all."  (Docket Entry 8 at 17 (quoting Tr. 22); <u>see also</u> <u>id.</u> at 17-18 (citing POMS § DI 25020.010.B.2.a, <u>Tucker</u>, SSR 96-9p, and <u>Capps</u>).)  In <u>Tucker</u>, this Court held that, although "the RFC's reference to 'concentrating on task for two hours at a time before

26

changing tasks or being redirected' . . . on its face, . . . appear[ed] to address [the p]laintiff's ability to stay on task," Tucker, 2019 WL 3581795, at *5, because the ALJ did not include any other mental limitation in the RFC, the two-hour increment reference "did not provide any limitation to account for [the p]laintiff's moderate deficit in CPP, but instead just left in place the standard work schedule (without explaining why [the p]laintiff could meet the demands of such a schedule despite her moderate deficit in CPP)," id. at *6.

A judge in the Eastern District of North Carolina, faced with a similar argument, persuasively explained why Tucker's facts rendered that case inapposite:

> In support of her argument, [the p]laintiff cites Tucker[]. The court in Tucker held that an RFC's reference to "concentrating on a task for two hours a time before changing tasks or being redirected," absent further explanation, failed to adequately account for a moderate limitation on the ability to stay on task. [The p]laintiff seemingly argues that, since the Tucker plaintiff's moderate limitation on his ability to stay on task was not adequately resolved by a two-hour limitation, her limitation must not be resolved by a two-hour limitation either. However, her situation is distinguishable from the plaintiff in Tucker. Unlike the plaintiff in Tucker, whose only non-exertional limitation was a two-hour work limitation, [the p]laintiff's non-exertional limitations also include a mandate for simple, routine tasks. In fact, the court in Tucker explicitly faulted the ALJ for including the two-hour

27

limitation without any mental restrictions. [The p]laintiff's reliance on *Tucker* is thus inapposite.

Moore v. Bisignano, No. 4:24CV76, 2025 WL 1905344, at \*3 (E.D.N.C. July 10, 2025) (unpublished) (emphasis added).

Indeed, this Court has also explained that an ALJ's inclusion of additional mental limitations in connection with a two-hour increment reference suffices under Mascio:

> The ALJ's RFC explicitly limits [the p]laintiff's ability to maintain CPP and stay on task to two-hour periods of time. [The p]laintiff contends that such a finding amounts to no restriction because it effectively treats [the p]laintiff as if she could stay on task for an eight-hour workday because customary work breaks occur approximately every two hours. However, the ALJ did not find that [the p]laintiff maintained the ability to stay on task for two-hour periods to perform all manner of work; rather, the ALJ found that [the p]laintiff could stay on task for two-hour blocks of time only when performing SRRTs in a low stress work setting, which, in addition to the nature of the work being performed, [wa]s further defined to mean no production-pace or quota-based work, rather a goal-oriented job primarily dealing with things as opposed to people, with no more than occasional work with the public as a component of the job, and no more than occasional changes in the work setting. Thus, the ALJ clearly did include a limitation in the RFC to account for the state agency psychological consultants' . . . opinion regarding [the p]laintiff's ability to maintain concentration.

Scott v. Berryhill, No. 1:16CV48, 2017 WL 500000, at \*5 (M.D.N.C. Feb. 7, 2017) (unpublished) (emphasis added) (internal citations, quotation marks, and brackets omitted), recommendation adopted, slip op. (M.D.N.C. Mar. 1, 2017) (Eagles, J.). Similarly, here, as the ALJ found that Plaintiff could maintain CPP in two-hour increments only when performing work involving "one-to-three step

instructions" (Tr. 22 (emphasis added)), the ALJ "clearly did include a limitation in the RFC to account for [Plaintiff's moderate limitation in CPP]," Scott, 2017 WL 500000, at *5.

Moreover, the Court finds the reasoning in Capps distinguishable from the instant matter. In Capps, the court noted that "cases [in the District of Maryland] ha[d] addressed various ALJs' attempts to include corresponding limitations in their RFC assessments that address moderate limitations in [CPP,]" and that "th[e c]ourt ha[d] been clear that a restriction to 'simple tasks' or some variation on that phrase d[id] not meet the requirement." Capps, 2018 WL 4616018, at *5 (emphasis added). That court thus held that, "as it is currently articulated[,] the ALJ's RFC assessment [reflecting a limitation to carrying out simple tasks in two-hour increments] contains the equivalent of no limitation for [the p]laintiff's moderate difficulties in [CPP]." Id. at *6 (emphasis added). This Court, by contrast, has found that a limitation to "'simple tasks' or some variation on that phrase," id. at *5, can, with appropriate explanation, sufficiently account for moderate limitations in CPP under Mascio, see, e.g., Wall v. Colvin, No. 1:15CV1089, 2016 WL 5360682, at *4-6 (M.D.N.C. Sept. 23, 2016) (unpublished) (finding RFC limitation to simple, routine, and repetitive tasks sufficiently accounted for moderate deficit in CPP under Mascio), recommendation adopted, slip op. (M.D.N.C. Oct.

29

14, 2016) (Osteen, C.J.).  Accordingly, <u>Capps</u> does not persuade the Court here.

Next, Plaintiff maintains that the ALJ erred by relying on Plaintiff's ability to engage in daily activities that "may be done at [P]laintiff's own pace" and did not demonstrate an ability to stay on task in a work setting.  (Docket Entry 8 at 20 (citing Tr. 20-21, 23).)  More specifically, Plaintiff asserts that the ALJ "not[ed P]laintiff['s] testi[mony] that he 'socialized with his wife, watched television, could maintain his own personal care[,] . . . prepared simple meals, drove a car, cared for his wife financially, could go out alone, and was able to count change'" (<u>id.</u> at 18-19 (quoting Tr. 28)), as well as references in medical records that Plaintiff could "take walks with his wife, watch movies, . . . [and] do basic household chores" (<u>id.</u> at 19 (citing Tr. 28)).  According to Plaintiff, "these statements address [P]laintiff's ability to perform daily home tasks, not his ability to stay on task for an extended period in the performance of successive tasks on a sustained basis as would be the case in a competitive work environment."  (<u>Id.</u>; <u>see also</u> <u>id.</u> (quoting 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00D.3.b for proposition that "[a claimant] may spend [his or her] time among only familiar people or surroundings, in a simple and steady routine or an unchanging environment, or in a highly structured setting," and that such circumstances "do[] not necessarily show how [he or she]

30

would function in a work setting on a sustained basis throughout a normal workday or workweek"); id. at 20 (quoting Brown v. Commissioner Soc. Sec. Admin., 873 F.3d 251, 269 (4th Cir. 2017) (faulting ALJ for emphasizing the plaintiff's "activities such as cooking, driving, doing laundry, collecting coins, attending church, and shopping" without "acknowledg[ing] the limited extent of those activities as described . . . or explain[ing] how those activities showed that [the plaintiff] could sustain a full-time job" (hyphen omitted)), and Culver v. Commissioner, Soc. Sec. Admin., No. 14CV432, 2015 WL 4485268, at *3 (D. Md. July 21, 2015) (unpublished) (holding that ALJ's reliance on the plaintiff's ability to "use[] the computer to plays [sic] video games and chat on line [sic] . . . b[ore] little-to-no relation to her abilities in the area of [CPP], even as to her ability to sustain unskilled work" (internal quotation marks omitted))).)

In considering Plaintiff's subjective reports of diminished concentration and focus, the ALJ acknowledged 1) Plaintiff's statements on a Function Report that his "PTSD, depression, and anxiety . . . lead [sic] to problems with . . . concentration, completing tasks, . . . and following instructions" (Tr. 23 (citing Tr. 280-87)), and 2) Plaintiff's "testi[mony] that he suffered from . . . a depressed mood, anxiety around others, reliving past traumas, impaired focus and concentration, . . . difficulties being around others, crying spells, [and] poor memory" (id. (referencing

31

Tr. 45-47, 49-52)), but found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [we]re not entirely consistent with the medical evidence of record," because Plaintiff "ha[d] described daily activities and exhibited behavior that [wa]s inconsistent with [his] allegations of disabling symptoms and limitations" (id.). In that regard, the ALJ noted that, "[d]espite [Plaintiff]'s symptoms, [he] reported that he exercised at the gym, helped care for pets, watched television, maintained his own personal care, prepared simple meals, drove a car, cared for his wife financially, could go out alone, [] was able to count change[,] . . . took walks with his wife, watched movies, . . . [and] did basic household chores." (Tr. 23.) As discussed in more detail below, the ALJ's reliance on Plaintiff's daily activities in formulating the mental RFC did not constitute error for two reasons.

First, Brown underscored the ALJ's failure to recognize qualifications the claimant placed on his ability to perform daily activities. See Brown, 873 F.3d at 263 ("The ALJ did not acknowledge the extent of th[e daily] activities as described by [the plaintiff], e.g., that he simply prepared meals in his microwave, could drive only short distances without significant discomfort, only occasionally did laundry and looked at coins, . . . had discontinued regular attendance at church[,] and limited his shopping to just thirty minutes once a week." (emphasis

32

added)).  In contrast, Plaintiff here neither argues that the ALJ failed to recognize qualifications on Plaintiff's ability to engage in daily activities, nor disputes the accuracy of the ALJ's summarization of Plaintiff's reported activities.  (See Docket Entry 8 at 18-21; see also Docket Entry 11 at 5-7.)

Second, the ALJ did not rely solely on Plaintiff's daily activities to discount his subjective symptom reports, but rather as one part of the ALJ's overall analysis. (See Tr. 22-30.) Plaintiff's ability to engage in activities such as exercising, cooking, performing housework, watching television and movies, and driving, even on a limited basis, provides some support, along with the medical and opinion evidence discussed by the ALJ, for the ALJ's conclusion that Plaintiff's mental impairments caused moderate limitation in CPP (see Tr. 21), but did not prevent him from performing work involving "one-to-three step instructions in two-hour increments" and "no interaction with the general public" (Tr. 22).

Plaintiff further asserts that the ALJ "list[ed] mental status exam findings that [P]laintiff 'displayed a euthymic mood, a congruent affect, no suicidal ideation, no auditory or visual hallucinations, full orientation, intact fund of knowledge, good ability on basic calculations, intact ability to follow instructions, normal attention span, and low average intelligence'" (Docket Entry 8 at 21 (quoting Tr. 28)), without "connect[ing them]

33

to the ability to stay on task" or "explaining why th[ey] would mean no further limitations, such as a limitation to simple, routine, repetitive tasks[,] would be required in the RFC to account for a moderate limitation in [CPP]" (id.). That argument falls short.

The ALJ here found that "the objective medical records d[id] not completely corroborate [Plaintiff's] statements and allegations regarding his impairments and resultant limitations." (Tr. 23.) In support of that assertion, the ALJ made the following, pertinent observations:

- on November 1, 2021, at "a comprehensive traumatic brain injury evaluation . . . [, Plaintiff] displayed intact ability to follow instructions, normal attention span, intact speech, [and a] good ability to formulate complete sentences" (Tr. 24 (emphasis added) (citing Tr. 487-99));

- on November 5, 2021, at a visit to evaluate complaints of insomnia, "[Plaintiff] displayed good ability to follow instructions, normal speech, [and a] a normal attention span" and [n]o abnormal . . . mental symptoms were reported" (id. (emphasis added) (citing Tr. 481-87));

- at a consultative psychological examination by Dr. Ernest K. Akpaka on November 9, 2022, "[Plaintiff] displayed normal speech, logical and goal directed thought processes, normal thought content, . . . full orientation, intact fund of knowledge, good ability on basic calculations, and low average intelligence" (Tr. 27 (emphasis added) (citing Tr. 1067-71)); and

- "[r]ecords [] show that [Plaintiff]'s mental impairments could reasonably cause a mildly anxious mood and some difficulties with memory" (Tr. 28 (emphasis added) (referencing Tr. 1067-71).

34

Those observations support the ALJ's determination that, despite Plaintiff's moderate limitation in CPP (see Tr. 21), he remained able to perform work involving "one-to-three step instructions in two-hour increments" and "no interaction with the general public" (Tr. 22).[12]

Lastly, Plaintiff contends that the ALJ failed to "include[] further limitations in social functioning" in the RFC to account for Plaintiff's "moderate limitations in interacting with others." (Docket Entry 8 at 23.)  In that regard, Plaintiff points out that "[t]his [C]ourt has observed that[,] where an ALJ provides no explanation as to why moderate limitations in social functioning failed to translate into work-related limitations in the RFC, remand is required."  (Id. at 24 (citing Cummings v. Colvin, No. 1:14CV465, 2016 WL 792433, at *5-6 (M.D.N.C. Oct. 31, 2017) (unpublished) (Peake, M.J.), recommendation adopted, slip op. (M.D.N.C. Mar. 28, 2016) (Osteen, C.J.)).)  Plaintiff further notes that Dr. Akpaka opined "that [P]laintiff [wa]s 'likely to have trouble relating to others'" (id. (quoting Tr. 1070) (italics added by Plaintiff)), and argues that the ALJ should not have discounted that opinion based on Dr. Akpaka's "use of [the] word[] . . . 'likely'" (id. (citing Graham v. Astrue, 733 F. Supp.

_____

[12] Notably, the ALJ could not have cited to additional mental status examinations, as the record did not contain any further mental health treatment.

35

2d 724, 727-28 (E.D.N.C. 2010))). Those contentions fail to carry the day for Plaintiff.

To begin, it remains unclear whether Mascio applies to moderate limitations in broad functional areas other than CPP. Although some decisions have remanded under Mascio for an ALJ's failure to adequately account for moderate limitations in social interaction, see, e.g., Dennis v. Berryhill, 362 F. Supp. 3d 303, 309 (W.D.N.C. 2019) (extending Mascio to moderate limitation in social functioning); Cummings, 2016 WL 792433, at *5-6 (same); Fauber v. Colvin, No. 6:15CV16, 2016 WL 8736904, at *5 (W.D. Va. Aug. 12, 2016) (unpublished) (same); Shryock v. Commissioner, Civ. No. 15-1136, 2016 WL 245531, at *2 n.3 (D. Md. Jan. 21, 2016) (unpublished) ("I further note that the ALJ also found a moderate limitation in the area of social functioning, but imposed no corresponding limitation in the RFC assessment. Because this appears to be a *Mascio*-like error in a different functional area, the ALJ should further address this issue on remand."), cases exist to the contrary, see Parker v. Kijakazi, No. 9:22CV1041, 2023 WL 3020712, at *12 & n.14 (D.S.C. Jan. 6, 2023) (unpublished) (noting that "the Fourth Circuit has not extended *Mascio*'s reasoning to the categor[y] of interacting with others," as well as that "even those courts which have extended the reach of *Mascio* [to moderate limitation in social interaction] have held that it is not required

36

that a corresponding RFC restriction specifically address interactions with each category of individuals — coworkers, supervisors, and the public[, and] . . . have fallen back on the overarching requirement that an ALJ must provide a narrative discussion that builds an accurate and logical bridge from the evidence to [the ALJ's] conclusion" (internal citations and quotation marks omitted)), recommendation adopted, 2023 WL 2180069 (D.S.C. Feb. 23, 2023) (unpublished); Lemon v. Kijakazi, No. 4:20CV2310, 2021 WL 3661151, at *8 (D.S.C. Aug. 18, 2021) (unpublished) ("[N]o Fourth Circuit Court of Appeals decision has extended *Mascio*'s reasoning to moderate limitations in interacting with others. There is no conversion rule/required accommodation in the RFC when a moderate social limitation is found at an earlier step; the normal RFC regulations still apply — that the ALJ must support the RFC findings with substantial evidence." (internal quotation marks omitted)); Long v. Saul, No. 6:20CV3345, 2021 WL 6841702, at *5 (D.S.C. July 9, 2021) (unpublished) ("*Mascio* addressed the necessary explanation required when an ALJ finds moderate limitations in the domain of [CPP], not in the domain of interacting with others. Indeed, the plaintiff has referenced no binding case law holding that an ALJ must address limitations in the domain of interacting with others by explaining the limitation with respect to the public, co-workers, and supervisors. Instead, the persuasive authority cited by the plaintiff notes that an ALJ

37

must explain evidentiary conflicts – not that such limitations are required." (citing <u>Dennis</u>)), <u>recommendation adopted sub nom.</u> <u>Scott L. v. Kijakazi</u>, No. 6:20CV3345, 2022 WL 214523 (D.S.C. Jan. 25, 2022) (unpublished); <u>Guest v. Colvin</u>, No. 1:15CV776, 2016 WL 4007612, at *6 (M.D.N.C. July 26, 2016) (unpublished) (expressing "doubt [] as to whether <u>Mascio</u>'s holding with regards to [CPP] should apply to" a case involving limitations in social functioning, "particularly given that the Fourth Circuit made clear its CPP-based holding rested on the distinction between the ability to perform simple tasks and the ability to stay on task, and such a distinction does not clearly apply in the social functioning context" (internal citation omitted)), <u>recommendation adopted</u>, slip op. (M.D.N.C. Aug. 24, 2016) (Schroeder, J.).  Moreover, even assuming the holding in <u>Mascio</u> at issue applies to functional areas other than CPP, for the following three reasons, Plaintiff has not shown that the ALJ failed to adequately account in the RFC for Plaintiff's moderate limitation in social interaction.

First, the ALJ included in the RFC the limitations of "routine social interactions with coworkers and supervisors" and "no interaction with the general public" (Tr. 22) to account for Plaintiff's moderate limitation in interaction (<u>see</u> Tr. 21), and Plaintiff does not suggest what specific, additional limitations the ALJ should have included in the mental RFC (<u>see</u> Docket Entries 8, 11).  That failure precludes relief.  <u>See</u> <u>Carol H. v. Kijakazi</u>,

38

No. 5:20CV35, 2021 WL 3561241, at *13 (W.D. Va. Aug. 12, 2021) (unpublished) (rejecting the plaintiff's argument that ALJ failed to account for mental limitations in RFC, where the plaintiff "did not explain what functional limitations [the] ALJ [] should have included in the RFC"); Humphries v. Colvin, No. 3:15CV376, 2016 WL 8223429, at *5 (W.D.N.C. Oct. 17, 2016) (unpublished) (declining relief where "it d[id] not appear that [the p]laintiff [wa]s actually alleging based on contradictory evidence in the record that she ha[d] limitations that [we]re not addressed by the RFC; rather, she [wa]s simply arguing that her [mental] limitations [we]re cause for remand because the ALJ's decision d[id] not apply the same analysis the Fourth Circuit [in Mascio] would require for review of 'moderate' limitations in [CPP]" (internal quotation marks omitted)), recommendation adopted, 2017 WL 525666 (W.D.N.C. Feb. 8, 2017) (unpublished).

Second, the ALJ's discussion of the medical evidence of record supports the lack of additional interaction restrictions in the RFC. In the ALJ's rationale for the moderate (as opposed to marked or extreme) limitation in interacting with others, the ALJ noted that "[Plaintiff] reported that he exercised at the gym[, ] could go out alone[,] . . . [and] took walks with his wife." (Tr. 21.)

The ALJ also discussed the following, pertinent mental health evidence:

- on November 1, 2021, at "a comprehensive traumatic brain injury evaluation . . . [, Plaintiff] displayed . . . a <u>cooperative behavior, good eye contact, a euthymic mood, . . . and a congruent affect</u>" (Tr. 24 (emphasis added) (citing Tr. 487-99));

- on November 5, 2021, at a visit to evaluate complaints of insomnia, "[Plaintiff] displayed . . . a <u>euthymic mood . . . and a congruent affect</u>" and [n]o abnormal . . . mental symptoms were reported" (<u>id.</u> (emphasis added) (citing Tr. 481-87));

- at a consultative psychological examination by Dr. Akpaka on November 9, 2022, "[Plaintiff] displayed . . . <u>logical and goal directed thought processes[ and] normal thought content</u>" (Tr. 27 (emphasis added) (citing Tr. 1067-71)); and

- "[r]ecords [] show that [Plaintiff]'s mental impairments could reasonably cause a <u>mildly anxious mood and some difficulties with memory</u>" (Tr. 28 (emphasis added) (referencing Tr. 1067-71)).

The ALJ's citation of the above-quoted evidence clarifies why, notwithstanding finding Plaintiff moderately limited in interacting with others, the ALJ did not include greater interaction limitations in the RFC.[13]

Third, all three of jobs cited by the VE (<u>see</u> Tr. 57), and adopted by the ALJ at step five of the SEP (<u>see</u> Tr. 31-32) have <u>DOT</u> codes containing a fifth digit of 8, <u>see</u> <u>DOT</u>, No. 209.5**8**7-034

---

[13] Again, given the lack of further mental health treatment in the record, the ALJ could not have cited to additional mental status examinations.

40

("Marker"), 1991 WL 671802; <u>DOT</u>, No. 222.6**8**7-022 ("Routing Clerk"), 1991 WL 672133; <u>DOT</u>, No. 222.5**8**7-038 ("Router"), 1991 WL 672123, representing the lowest level of human interaction in the labor market, <u>see</u> <u>Fletcher v. Colvin</u>, No. 1:15CV166, 2016 WL 915196, at *10 (M.D.N.C. Mar. 4, 2016) (unpublished), <u>recommendation adopted</u>, slip op. (M.D.N.C. Mar. 28, 2016) (Osteen, Jr., C.J.).  Moreover, the <u>DOT</u> listings for all three jobs rate the activity of "Taking Instructions – Helping" as "Not Significant" and reflect the tasks of "Talking" and "Hearing" as "Not Present - Activity or condition does not exist."  <u>DOT</u>, No. 209.587-034 ("Marker"), 1991 WL 671802; <u>DOT</u>, No. 222.687-022 ("Routing Clerk"), 1991 WL 672133; <u>DOT</u>, No. 222.587-038 ("Router"), 1991 WL 672123.  Accordingly, Plaintiff has not shown that remanding for the ALJ to consider additional interaction limitations in the RFC would lead to a different outcome in his case.

In sum, because the ALJ complied with <u>Mascio</u> by adequately accounting in the RFC for Plaintiff's moderate limitation in CPP (and, to the extent <u>Mascio</u> would require it, for Plaintiff's moderate limitation in interacting with others), the undersigned will deny relief on Plaintiff's second and final assignment of error.[14]

---

[14] Plaintiff's contention that the ALJ should not have discounted Dr. Akpaka's opinion that Plaintiff "'[wa]s *likely* to have trouble relating to others'" (Docket Entry 8 at 24 (quoting Tr. 29 (in turn quoting Tr. 1070)) (emphasis added by Plaintiff)) based on Dr. Akpaka's "use of [the]

41

### III. CONCLUSION

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **AFFIRMED**, and that this action is **DISMISSED** with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

March 16, 2026

---

word[] . . . 'likely'" (id. (quoting Tr. 1070) (citing Graham, 733 F. Supp. 2d at 727-28)) also fails to persuade the Court that the ALJ did not adequately account in the RFC for Plaintiff's moderate interaction limitations. In Graham, the court noted that "[t]he ALJ cited the use of words such as 'probably,' 'likely,' and 'appeared,' as the basis for his decision to accord these opinions only 'little weight[,]'" and found that "the use of th[o]se terms d[id] not show the equivocation that the ALJ found." Graham, 733 F. Supp. 2d at 727-28. However, the court did not provide any further explanation why the use of equivocal words by an opining medical source would not constitute valid grounds, at least in part, for discounting the opinion. See id. In contrast, this Court has recognized that "[n]umerous courts have upheld the discounting of medical opinions that use equivocal terms such as 'may.'" Guest, 2016 WL 4007612, at *5 (collecting cases). Moreover, Plaintiff has not shown how even the ALJ's full crediting of Dr. Akpaka's opinion that Plaintiff "was likely to have trouble relating to others" (Tr. 1070) would have resulted in a different outcome in his case. The ALJ already found Plaintiff had moderate limitation in interacting with others (see Tr. 21) and included "routine social interactions with coworkers and supervisors" and "no interaction with the general public" in the RFC to account for that moderate limitation (Tr. 22) and, as discussed above, the jobs adopted by the ALJ at step five of the SEP already reflected the lowest level of human interaction in the labor market, see DOT, No. 209.587-034 ("Marker"), 1991 WL 671802; DOT, No. 222.687-022 ("Routing Clerk"), 1991 WL 672133; DOT, No. 222.587-038 ("Router"), 1991 WL 672123; see also Fletcher, 2016 WL 915196, at *10.